UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 25-cr-64 |
| | ) | |
| vs. | ) | **DEFENDANT'S SENTENCING** |
| | ) | **MEMORANDUM AND MOTION FOR** |
| | ) | **DOWNWARD VARIANCE** |
| METALLIE LEIGH GILLETTE, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW Defendant Vincent Gillum, by and through his attorney Andrea D. Jaeger of Keegan, Tindal, & Jaeger, and for his Sentencing Memorandum and Motion for Downward Variance addressing the factors to be considered in imposing Defendant's sentence under 18 U.S.C. § 3553(a), states as follows:

## A.  WITNESSES AND EXHIBITS

1.    Defendant does not anticipate calling witnesses.

2.    Defendant has submitted documentary exhibits.

## B.  OBJECTIONS TO THE PSR AND GUIDELINES ISSUES

3.    No Guidelines issues remain outstanding.

## C.  DEFENDANT'S CHARACTERISTICS AND "NEEDS" OF THE SENTENCE IMPOSED

4.    Defendant respectfully suggests lengthy incarceration is not necessary to promote respect for the law, to afford adequate deterrence, or to protect the public.  18 U.S.C. § 3553(a)(2)(A)–(C).  While Defendant recognizes incarceration is the eventual outcome of this sentencing hearing, the period of incarceration recommended by the Guidelines is greater than necessary to do justice and to achieve the goals of sentencing.  To the contrary, the totality of the circumstances, including the nature and circumstances of Defendant's background, suggest a

downward variance is appropriate and sufficient to achieve the goals of sentencing.  Rehabilitation is possible—particularly considering scientific research indicating an extremely low estimated rate of recidivism, particularly when compared to other offenders—and should be a primary goal in determining an appropriate disposition. 18 U.S.C. § 3553(a)(2)(B)–(C).

5.      Here, of particular note, Defendant has accepted responsibility and taken affirmative action to show her genuine remorse for her conduct.  Defendant admitted her conduct to law enforcement, and she thereafter entered a timely plea of guilty.  PSR ¶ 29.  Furthermore, Defendant has taken affirmative actions, which will be addressed more specifically at sentencing hearing, to show her genuine remorse and admit the wrongfulness of her conduct.  Moreover, Defendant plead guilty for the related state case, and she has completed her imposed 15 year sentence of incarceration with the Iowa Department of Corrections.  PSR ¶ 50.  Prior to the instant offense, Defendant's singular prior offense was a simple misdemeanor offense, for which she also accepted responsibility by pleading guilty and was sentenced to a minimum fine.  PSR ¶ 49.

6.      While Defendant's recommended USSG range is calculated as 600 months, the nature and circumstances of the offense and Defendant's history and characteristics suggests a variance below the recommended Guidelines is warranted and appropriate.

7.      In the context of this category of offense, Defendant's conduct here is not unusually aggravating, but rather reflects common characteristics found in similar cases.  As noted and found by the U.S. Sentencing Commission:

   a.  A sentence within Defendant's asserted Guideline range results in an "odd[ ] of recidivism [ ] approximately 29 percent lower [as an offender sentenced to more than 120 months incarceration] compared to a matched group of federal offenders receiving shorter sentences."  U.S. Sentencing Commission, LENGTH OF

INCARCERATION AND RECIDIVISM (2022), available at https://www.ussc.gov/research/research-reports/length-incarceration-and-recidivism-2022 (accessed June 17, 2026).

    i. Here, the length of Defendant's sentence indicates a lower rate of recidivism.

b. "The typical production offender maintains a position of trust over the victim and has physical access to the child during the production of child pornography.  Of the 512 child pornography production offenders sentenced in fiscal year 2019, 60.3 percent were related to or otherwise maintained a position of trust over the minor victim, whether through familial relationships or by virtue of the offender's role as a teacher or a coach, for example."  U.S. Sentencing Commission, REPORT AT A GLANCE: FEDERAL SENTENCING OF CHILD PORNOGRAPHY, Production Offenses, available at https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-production-offenses (accessed June 17, 2026).

    i. Here, the circumstances of Defendant's offense, compared to production child pornography offenders, does not suggest a more aggravating circumstance than often found in similar cases.  Defendant's conduct and relationship related to MV1 reflects the position of trust often characteristic of comparable offenses.  As such, the circumstances of Defendant's offense fails to present an unusually aggravating case.

c. "[N]on-production child pornography offenses increasingly involve voluminous quantities of videos and images that are graphic in nature, often involving the youngest victims."  Some offenders were noted by the Sentencing Commission to

"possess[ ] and distribut[e] millions of images and videos."  U.S. Sentencing Commission, REPORT AT A GLANCE: FEDERAL SENTENCING OF CHILD PORNOGRAPHY, Non-Production Offenses, available at https://www.ussc.gov/research/research-reports/report-glance-federal-sentencing-child-pornography (accessed June 17, 2026).

    i. Here, such indicates the volume of Defendant's images, and the nature thereof, fails to indicate an unusually aggravating circumstance compared to comparable offenses and similarly situated offenders.  To the contrary, Defendant's offense presents fewer images than commonly found in comparable cases.  *See* PSR ¶ 22 (attributing 380 images).

d. Additionally, the ubiquity of smart phones, publicly available wifi internet, as well as the proliferation of chatting and file trading applications render the rationale behind many of the Guidelines enhancements increasingly obsolete. "Enhancements that were initially intended to target more serious and more culpable offenders have resulted in an increase in the average guideline minimum and average sentence imposed for non-production child pornography offenses." *Id.* In fact, the Commission reports 95% of offenders receive enhancements for victims under the age of 12; 77% of cases involve 600+ images; and 84% of cases involve images depicting abuse of an infant or toddler.  *Id.*  Similarly, the Commission reports "the expansion of digital and mobile technology has contributed to a 422% increase in the number of production offenders sentenced over a 15-year period, from 98 offenders in FY 2005 to 512 offenders in FY 2019."  U.S. Sentencing Commission, REPORT AT A GLANCE: FEDERAL SENTENCING OF CHILD

PORNOGRAPHY, Production Offenses, available at https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-production-offenses (accessed June 17, 2026).

      i. Here, such indicates the enhancements found in this matter and the circumstances of the offense are not atypical or unusually aggravating when compared to comparable offenses and similarly situated offenders. Additionally, even the Commission notes the Guidelines in this area fail to reflect their original intent and are, instead, being applied to the majority of cases and disproportionately driving up sentences without a correlating basis in science and research. The arbitrary cut off of 600 images is, by nature, arbitrary, particularly when considering the Commission's acknowledgement the number of images is "increasingly involve[ing] voluminous quantities" "[f]acilitated by advancements in digital and mobile technology…." U.S. Sentencing Commission, REPORT AT A GLANCE: FEDERAL SENTENCING OF CHILD PORNOGRAPHY, Non-Production Offenses, available at https://www.ussc.gov/research/research-reports/report-glance-federal-sentencing-child-pornography (accessed June 17, 2026). Moreover, the increase in technology has contributed to an increase in similar offenses; as such, the use of technology herein is not unusually aggravating.

e. "Although sentences imposed remain lengthy, courts increasingly apply downward variances in response to high guideline ranges that apply to the typical non-production offender." *Id.*

  i. Here, such indicates a downward variance below Defendant's suggested Guideline range would be consistent with national practices in similar cases.

f. "In 2012, the Commission recommended that Congress provide the Commission express authority to amend the guidelines that were promulgated pursuant to specific congressional directives. Such authority would allow the Commission to account for changes in typical offense behavior and advancements in technology. … As courts contend with the outdated statutory and guideline structure, sentencing disparities among similarly situated offenders have become increasingly pervasive." The Commission notes possession offenders are receiving sentences which vary widely, from probation to 228 months; receipt offenders also have disparity issues in receiving sentences varying from 37–180 months; and distribution offenders likewise have disparity issues in receiving sentences varying from less than 1–240 months. *Id.*

  i. Here, the Commission itself calls for departure and variance from the Guidelines as a result of the problems created by the Guidelines in child pornography cases. This guidance remains informative here. Variance here, then, is consistent with apparent Commission directives. Additionally, a sentence below Defendant's suggested Guideline calculation is consistent with sentences for other offenders noted by the Commission.

g. Application of the enhancement for repeat and dangerous sex offenders "has more than doubled since fiscal year 2010. This increase is driven almost entirely by the application of enhanced sentences for an offender's pattern of activity under

§4B1.5(b) (which does not require a prior conviction to apply). More than half (51.6%) of the child pornography production offenders sentenced in fiscal year 2019 received enhanced sentences under §4B1.5(b) for engaging in a pattern of activity involving prohibited sexual conduct….” U.S. Sentencing Commission, REPORT: FEDERAL SENTENCING OF CHILD PORNOGRAPHY, Production Offenses, at p. 19, available at https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-production-offenses (accessed June 17, 2026).

  i. Here, application of the chapter four enhancement fails to indicate an unusually aggravating circumstance, as the enhancement fails to distinguish the minutia of individual cases. Rather, the enhancement is applied to more than half of all production offenders—without a tie to distinguish more or less culpable production offenders—and without the characteristic and necessary tie to scientific research.

h. Non-production CP offenders had an overall recidivism rate of 27.6%. U.S. Sentencing Commission, REPORT AT A GLANCE: FEDERAL SENTENCING OF CHILD PORNOGRAPHY, Non-Production Offenses, available at https://www.ussc.gov/research/research-reports/report-glance-federal-sentencing-child-pornography (accessed June 17, 2026).

  i. Here, research into recidivism rates of child pornography offenders, especially when compared to recidivism rates of other categories of offenses, indicates the recidivism rate here, especially considering Defendant's personal characteristics, is lower than other offenses.

8.      Defendant accepted responsibility for her conduct, forgoing her constitutional rights to compel the Government to prove her guilty beyond a reasonable doubt in this matter. Defendant's conduct in entering a plea of guilty demonstrates that lengthy incarceration is not necessary to promote the sentencing goal of respect for the law.   Rather, Defendant has demonstrated her respect for the law by foregoing her rights and accepting the consequences, including a substantial sentence of incarceration.  Furthermore, because Defendant has entered a plea of guilty, and because the resulting sentence will be a substantial sentence of incarceration within the Bureau of Prisons, no further sentence beyond a below USSG sentence is necessary to specifically deter Defendant, to advance interests in general deterrence, and to protect the public. Indeed, the consideration for acceptance of responsibility, and foregoing constitutional rights to trial, are particularly important in cases involving child pornography or sexual exploitation, given the inherent further publication of child pornography and emotional consequences of testimony inherent in the trial process in such cases.

9.      Offenses of this nature incite an emotional reaction:  These crimes are viewed as repulsive and immoral.  Setting aside emotional responses, however, the sentence in this matter must be based upon an evaluation of legal considerations, such as the goals of sentencing, and scientific research.  As noted, scientific research indicates child pornography offenders have reduced rates of recidivism compared to other offenders.

10.     Even the U.S. Supreme Court and Iowa Supreme Court have fallen victim to repeated misconceptions concerning sex offenses.  In 2005, the Iowa Supreme Court dealt with an issue of first impression, the residency restrictions placed upon sex offenders. *See State v. Seering*, 701 N.W.2d 655, 664 (Iowa 2005).   Upholding the restrictions, the court gave a nod to the hardships the restrictions placed on Keith Seering and his family, who had limited financial

resources. But Seering's constitutional arguments were rejected because "the risk of recidivism posed by sex offenders is 'frightening and high,'" as "numerous authorities have acknowledged." The only authority cited for the judicial finding was Justice Kennedy's opinion in *Smith v. Doe*, 538 U.S. 84 (2003). Justice Kennedy's first statement on these issues arose in *McKune v. Lile*, 536 U.S. 24, 34 (2002), in which Justice Kennedy wrote the recidivism rate "of untreated offenders has been estimated to be as high as 80%." He further described such recidivism as "frightening and high." *McKune*, 536 U.S. at 34. In 2015, Professors Ira Ellman and Tara Ellman published "'Frightening and High' the Supreme Court's Crucial Mistake About Sex Crime Statistics." Constitutional Commentary, Vol. 30: 495. The article forensically examines the sources of Justice Kennedy's recidivism findings, which have risen to accepted judicial fact. Professor Ellman found the oft cited statistic was not a statistic at all. Rather, it was a bare assertion by a counselor in Oregon who ran a sex offender treatment program.

> He is a counselor, not a scholar of sex crimes or re-offense rates, and the cited article is not about recidivism statistics. It's about a counseling program for sex offenders he then ran in an Oregon prison. His unsupported assertion about the recidivism rate for untreated sex offenders was offered to contrast with his equally unsupported assertion about the lower recidivism rate for those who complete his program.

*Id.* at 498.

11. Regardless of the validity of one's emotional reaction, sentencing is premised upon goals of rehabilitation in addition to deterrence, retribution, and punishment. Toward this end, sentences are to be tied out to specific goals and premised upon scientific research and logic. *See* 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."); *Kimbrough v. United States*, 552 U.S. 85 (2007) (Commission's usual practice was to develop Guideline sentences "using an empirical approach based on data about past sentencing practices, including 10,000

presentence investigation reports."). Yet, as detailed by more specifically by Judge Bennett in *Beiermann* and others, the Guidelines for sex offenses fail to reflect the Commission's role and fail to reflect the best resource for determining an appropriate sentence. Examining research related to sex offenders indicates sex offenders, like Defendant here, have exceptionally low recidivism rates.

12.     With that in mind, the Guidelines for sex offense cases "[do] not exemplify the Sentencing Commission's exercise of its characteristic institutional role and empirical analysis, but was the result of congressional mandates, often passed by Congress with little debate or analysis." *U.S. v. Beiermann*, 599 F.Supp.2d 1087, 1100–04 (N.D. Iowa 2009) (J. Bennett) (collecting cases).

> I join my brethren who find that the child pornography guideline, U.S.S.G. § 2G2.2, which is the result of congressional mandates, is entitled to considerably less deference than other guidelines that *are* based on the Commission's exercise of its institutional expertise and empirical analysis. Perhaps in somewhat of a rush to appease the public's and politicians' noted and continued zeal for harsher sentences in child pornography cases, many courts have claimed that harsher sentences in child pornography cases will somehow reduce both the demand for and availability of child pornography on the Internet. I wish it were that simple. … While the public's outcry for harsher sentences in child pornography cases is certainly understandable, there is not a single sliver of evidence in this sentencing record remotely supporting the notion that harsher punishment would reduce the flow of child pornography on the internet. From the rapid growth of these cases that my colleagues around the country and I are seeing, we cannot sentence Internet users and sharers of child pornography fast enough or long enough to make a dent in the availability of such material on the Internet. This does not mean that [defendant] should not receive a lengthy sentence for his criminal conduct, but it does mean that the sentence should not be longer simply to satisfy an objective that, while laudable, is not being achieved according to any empirical or other evidence in this case or, for that matter, empirical evidence in any other case or course that I am aware of. … I find that U.S.S.G. § 2G2.2 should be rejected on categorical, policy grounds, even in a "mine-run" case, and not simply based on an individualized determination that it yields an excessive sentence in a particular case.

*Id.* Because the Guideline applicable for this offense fails to reflect the Commission's role and fails to adequately take into account scientific research and goals of sentencing, variance is appropriate.

13.    The problems associated with child pornography and sex offense related Guidelines, and resulting overstatement of offense and likelihood of recidivism, is best exemplified by close examination of the use of a computer Guideline in particular. Guideline § 2G2.2(b)(6) provides a two-level enhancement "[i]f the offense involved the use of a computer of an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material…." USSG § 2G2.2(b)(6). Section 2G2.2, as a whole, is utilized for "Trafficking in Material Involving the Sexual Exploitation of a Minor; Receiving, Transporting, Shipping, Soliciting, or Advertising Material Involving the Sexual Exploitation of a Minor; Possessing Material Involving the Sexual Exploitation of a Minor with Intent to Traffic; [and] Possessing Material Involving the Sexual Exploitation of a Minor." USSG § 2G2.2. As the Court knows, this has been repeatedly applied by this and other courts, and repeatedly upheld by the 8th Circuit, while defendants repeatedly call for downward variance or other forms of relief. In a world where a cell phone, a car, a doorbell, a camera, a light switch, a thermostat, a microwave, and a seemingly infinite list of other objects is a "computer" within the scope of the Guidelines, it is difficult to imagine how an offense falling within the scope of § 2G2.2 could be utilized *without* a computer. To do so, it would seem individuals would be required to physically hand each other a literal scrapbook of child pornography, but this example is seemingly so outlandish in today's technological world, it feels somewhat comical or quaint. Moreover, even under such a hypothetical, one would have to question where the individuals obtained the CP to fill the supposed scrapbook. From a photographer's camera? Well, that would be a computer.

- 11 -

From a cell phone camera?  Again, computer.  A polaroid?[1]  Computer.  Copying machine from some other unknown source that somehow does not qualify as a computer?  Still a computer.  Nicephore Niepce's 1816 camera?  Computer.[2]  Having apparently exhausted all available means of producing a still or moving image, one would seemingly need to draw out the supposed child pornography, which of course would make it no longer child pornography.

14.     Enhancements are intended to be that: enhancements.  As such, enhancements should apply when there is some atypical factor, usually aggravating, that is outside the norm, average, or run of the mill case.  If a factor is no longer that—an atypical consideration not typically otherwise found in similar cases—it should no longer be an enhancement (it should be the base) and the enhancement no longer serves its intended purpose.  Continuing with this Guideline example, it is not the simple use of a computer, which would include the basic technology now found in all cell phones and vehicles (thermostats, doorbells, cameras…) and which appears to apply to every single offense under § 2G2.2, which itself makes some criminal activity more inherently evil or dangerous.  *See, e.g.*, *U.S. v. Kramer*, 631 F.3d 900 (8th Cir. 2011) (cellphone constitutes a computer and the comparable enhancement under § 2G1.3(b)(3) applies); *cf. Packingham v. North Carolina*, 137 S.Ct. 1730, 1735 (2017) (finding statute prohibiting sex offender from accessing social media sites violated the First Amendment and, in doing so, discussing the importance of the internet in today's world).  Application of the enhancement overstates the seriousness of the offense, unduly penalizes offenders without basis in today's

---

[1] Polaroid, incidentally, is a brand—this would more appropriately be called an "instant camera."

[2] "the term 'computer' means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device." 18 U.S.C. § 1030(e)(1) (referenced by USSG § 2G2.1 (application note 1)).

world, fails to accurately reflect the likelihood of recidivism, and constitutes double counting with an enhancement that swallows the rule.

15.     Other courts have acknowledged application of an enhancement for use of a computer makes very little sense in child pornography cases. *See, e.g., Beiermann*, 599 F. Supp. 2d at 1104–07 (collecting cases and authorities regarding USSG § 2G2.2, discussing the abandonment of the Commission's empirical analysis in child pornography cases, finding a categorical policy disagreement with the Guideline, and noting, in particular, the use of a computer enhancement, like virtually all the enhancements, impermissibly and illogically skews sentences even for "average" defendants to the upper end of the statutory range, regardless of other considerations, and fails to serve its stated purpose, which failure itself has been noted by the Commission).   Stated otherwise, the purpose of a sentencing enhancement is to reflect the seriousness of aggravated facts which make the act more dangerous or harmful than the "baseline" case established by a particular base offense level.   But, an "ordinary" child pornography case involves the use of computers, because that is how humans communicate with each other and that is how one possesses child pornography:   this enhancement "thus, blurs logical differences between least and worst offenders, contrary to the goal of producing a sentence no greater than necessary to provide just punishment." *Id.* at 1105.

16.     Of course, the computer enhancement is only one; the overarching problems with child pornography and sex offense related Guidelines this enhancement illustrates apply to others as well.  Application of the Guideline enhancement, like the Guideline as a whole, overstates the seriousness of Defendant's offense.  Any sentence greater than a below USSG sentence is greater than necessary to do justice in this matter.

17.     As this Court is well aware, the Court can sentence below the Guidelines based solely upon policy disagreements with the Guidelines. *See e.g. Spears v. U.S.*, 555 U.S. 261, 263–67 (2009) (*per curiam*); *U.S. v. Kimbrough*, 552 U.S. 85, 109–110 (2007). "In Kimbrough the Supreme Court held that it is not an abuse of discretion for a district court to vary from the Guidelines based on its policy disagreement concerning the disparity between crack and powder cocaine sentences." *U.S. v. Battiest*, 553 F.3d 1132, 1137 (8th Cir. 2009). The United States Supreme Court has permitted trial courts to reject the guidelines on categorical policy grounds. Stated differently, there is no need for the sentencing court to make an individualized determination an excessive sentence is yielded in a particular case. *U.S. v. Beiermann*, 599 F.Supp. 2d 1087 (citing *Spears*, 555 U.S. at 262).

18.     Here, the problems with sex offense related Guidelines remain relevant sentencing considerations. Reliance on the Guidelines, especially given the Commission's statistics noted *supra*, results in an unduly harsh sentence. Even the Commission has apparently acknowledged the problems with its own Guidelines. Therefore, a variance below Defendant's suggested Guideline calculation would be warranted, particularly when the Court notes Defendant's other personal characteristics and background, including her acceptance of responsibility, her difficult childhood and repeated traumatic childhood experiences, PSR ¶¶ 57–60, mental health needs, PSR ¶¶ 79–83, history of completing her education and interest in additional training, PSR ¶¶ 91–94, and history of substance use, PSR ¶¶ 85–90. This consideration suggests a downward variance is sufficient to meet the goals of sentencing, to account for considerations related to Defendant's history and characteristics, and to account for just punishment.

19.     While, certainly, punishment is a valid sentencing consideration and sentencing justification, Defendant suggests punishment is only one sentencing goal and rehabilitation is a

more important sentencing justification.  In this matter, a below Guidelines sentence best balances

the considerations for punishment and the other sentencing goals of rehabilitation and the need for

treatment.

## D. CONCLUSION

WHEREFORE Defendant respectfully requests he be sentenced in accordance with the

foregoing.

Respectfully submitted,

*/s/ Andrea D. Jaeger*
Andrea D. Jaeger
Keegan, Tindal & Jaeger
2322 E. Kimberly Rd. Ste. 140S
Davenport, Iowa 52807
Telephone: 563-355-6060/319-887-6900
Facsimile: 563-355-6666/319-688-2754
Email: andrea@keeganlegal.com

**ATTORNEYS FOR DEFENDANT**

## Certificate of Service

The undersigned certifies that the foregoing instrument was electronically filed on July 1, 2026, with the Clerk of Court using the CM/ECF system.  The foregoing was emailed to each of the attorneys of record herein at their respective addresses disclosed on the pleadings.

*/s/ Andrea D. Jaeger*